Citation Nr: 1736699 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 10-09 152 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Togus, Maine


THE ISSUES

1. Entitlement to a compensable rating for bilateral hearing loss.

2. Entitlement to a rating in excess of 10 percent for intervertebral disc syndrome (IVDS) of the lumbar spine prior to July 28, 2015, and in excess of 40 percent thereafter.

3. Entitlement to an initial rating for radiculopathy of the right lower extremity in excess of 10 percent.

4. Entitlement to service connection for obstructive sleep apnea with CPAP, to include as secondary to posttraumatic stress disorder (PTSD).

5. Entitlement to a total rating based on individual unemployability due to service-connected disability (TDIU). 




REPRESENTATION

Appellant represented by: Virginia Department of Veterans Services


ATTORNEY FOR THE BOARD

A. Faverio, Associate Counsel


INTRODUCTION

The Veteran had active service from June 1966 to June 1986.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina.

In an October 2014 decision, the Board denied an initial rating in excess of 10 percent for tinnitus. In addition, the Board remanded the issues of entitlement to increased ratings for hearing loss and IDVS for additional evidentiary development. The issue of entitlement to service connection for sleep apnea was remanded for the issuance of a Statement of the Case (SOC). See Manlincon v. West, 12 Vet. App. 238 (1999) (holding that where a claimant has submitted a notice of disagreement, but a Statement of the Case has not yet been issued, a remand to the RO is necessary). 

While the matter was in remand status, in a March 2017 rating decision, the RO increased the disability rating for the Veteran's IVDS to 40 percent, effective July 28, 2015. Although an increased rating was granted, the issue remains in appellate status, as the maximum schedular rating has not been assigned from the date of the claim, not has the Veteran withdrawn his appeal. See AB v. Brown, 6 Vet. App. 35, 38 (1993). 

In February 2017, in compliance with the Board's October 2014 Remand directives, the RO issued an SOC to the Veteran, and the Veteran subsequently perfected his appeal for service connected for sleep apnea with CPAP, to include as secondary to PTSD, in April 2017.


FINDINGS OF FACT

1. Throughout the period on appeal the Veteran manifested no worse than Level I acuity in his right ear and Level V acuity in his left ear.

2. Prior to July 28, 2015, the Veteran's IVDS of the lumbar spine was manifested by painful and slightly limited motion.

3. Since July 28, 2015, the Veteran's IVDS of the lumbar spine has not manifested by favorable or unfavorable ankylosis of the entire thoracolumbar spine.

4. Throughout the appeal period, the Veteran has not had ankylosis, favorable or unfavorable, of the thoracolumbar spine.

5. The Veteran's radiculopathy of the right lower extremity manifested as mild incomplete paralysis, and no more, throughout the period on appeal.

6. The Veteran's service-connected disabilities him under to follow or secure substantial gainful employment.


CONCLUSIONS OF LAW

1. The criteria for a compensable disability rating for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2016).

2. The criteria for a disability rating in excess of 10 percent for service connected IVDS of the lumbar spine for the period prior to July 28, 2015, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.71a (2016); Diagnostic Code 5243 (2016).

3. The criteria for a disability rating in excess of 10 percent for service connected IVDS of the lumbar spine for the period following to July 28, 2015, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.71a (2016); Diagnostic Code 5243 (2016).

4. The criteria for establishing an evaluation in excess of 10 percent for radiculopathy of the right lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.120, 4.124, 4.124a (2016); Diagnostic Code 8720 (2016).

5. The criteria for service connection for sleep apnea with CPAP, to include as secondary to PTSD, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.310 (2016).

6. The criteria for the assignment of a TDIU are met. 38 U.S.C.A. §§ 1155 , 5107 (West 2014); 38 C.F.R. § 4.16 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS


I. Due Process

Neither the Veteran nor her representative has raised any issues with the duty to notify or the duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

II. Background

The Veteran was service connected for IVDS (previously claimed as lumbosacral strain and/or a low back condition) and bilateral hearing loss in August 1989, with an effective date of July 1, 1986 for both disabilities. At that time, both disabilities were rated at 0 percent disabling. In May 2008, the Veteran filed a VA Form 21-4138 requesting an increased evaluation for his service-connected low back condition and bilateral hearing loss. Through an April 2009 rating decision, the Veteran was granted an increased evaluation of 10 percent disabling for his IVDS and denied a compensable rating for his bilateral hearing loss. The Veteran filed a Notice of Disagreement (NOD) in July 2009 and the appeal was perfected in August 2014. 

As stated above, the issues of increased rating for IVDS of the lumbar spine and bilateral hearing loss came before the Board in October 2014 and were remanded for current examinations. While in appellate status, a March 2017 rating decision granted a 40 percent disability rating for the Veteran's IVDS with an effective date of July 28, 2015. The issue of service connection for sleep apnea with CPAP, to include as secondary to PTSD, also came before the Board in October 2014 and was remanded pursuant to Manlincon v. West, for the issuance of an SOC, which was issued in February 2017. The Veteran perfected his appeal in April 2017 and the matter was returned to the Board.

Pursuant to the Board's October 2014 Remand directives, the Veteran was afforded a VA examination in July 2015 for his lower back condition and, most recently, an audiology examination in March 2017 for his bilateral hearing loss. The Veteran also submitted private medical evidence from Dr. Bash regarding his IVDS of the lumbar spine condition, bilateral hearing loss, and sleep apnea, and several lay statements.


III. Applicable Law and Analysis

 A. Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999). The Board does not find that stating the ratings is necessary or appropriate in this case.

The standard of proof to be applied in decisions on claims for VA benefits is set forth in 38 U.S.C.A. § 5107(b). Under that provision, VA shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b) (West 2014); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 A. Bilateral Hearing Loss

Hearing loss is rated under the criteria of 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100. Evaluations of defective hearing are derived by a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are rendered. See Lendenmann v. Principi, 3 Vet. App. 345 (1993). 

To evaluate the degree of disability from defective hearing, the Rating Schedule establishes 11 auditory acuity levels from Level I for essentially normal acuity through Level XI for profound deafness. These are assigned based on a combination of the percent of speech discrimination and the puretone threshold average, as contained in a series of tables within the regulations. 38 C.F.R. § 4.85(b). The "puretone threshold average" is the sum of the puretone thresholds at 1000, 2000, 3000, and 4000 Hertz, divided by four. This average is used in all cases to determine the Roman numeral designation for hearing impairment from Table VI or VIa. 38 C.F.R. § 4.85(d) (2016).

Table VII, "Percentage Evaluations for Hearing Impairment," is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment of each ear. The horizontal rows represent the ear having the better hearing and the vertical columns the ear having the poorer hearing. The percentage evaluation is located at the point where the row and column intersect. 38 C.F.R. § 4.85(e). 

The regulatory provisions also provide two additional circumstances under which alternative tables can be employed. One is where the puretone thresholds in any four of the five frequencies of 500, 1,000, 2,000, 3,000, and 4,000 Hertz are 55 decibels or greater. The second is where puretone thresholds are 30 decibels or less at frequencies of 1,000 Hertz and below, and are 70 decibels or more at 2,000 Hertz. See 38 C.F.R. § 4.86.

As set forth above, the Veteran was originally granted service connection for bilateral hearing loss in August 1989 and assigned a 0 percent disability rating, effective July 1, 1986. The Veteran filed a claim for an increased rating in May 2008. The Veteran was afforded a VA examination in July 2008. Based on the examination findings, in April 2009, the claim for an increased rating was denied. The Veteran appealed the denial.

The Veteran was afforded another VA examination for his bilateral hearing loss in March 2017. The Board has carefully considered these findings but, as discussed in detail below, finds that the Veteran's bilateral hearing loss does not more nearly approximate that required for a compensable rating under DC 6100.

In the March 2017 audiology hearing test, the report revealed pure tone thresholds, in decibels, as follows:

HERTZ

1000
2000
3000
4000
AVERAGE
RIGHT
30
50
70
75
56
LEFT
30
70
80
80
65

Average pure tone threshold was 56 decibels in the right ear and 65 in the left ear. Speech recognition was tested using the Maryland CNC word list, and the score was 94 percent discrimination in the right ear and 78 percent discrimination in the left ear. Pursuant to 38 C.F.R. § 4.86(b), the numeric designation of hearing impairment using Table VIa may be used for the left ear only because the pure tone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz, and using Table VIa results in a higher numeral for the Veteran's disability.

Evaluating the right ear under Table VI, which does not display an exceptional pattern of hearing impairment based on the examination results, the findings translate to Level I hearing in the right ear. 38 C.F.R. § 4.85, Table VI. Using solely the average pure tone threshold results for the left ear, the examination findings translate to Level V hearing in the left ear. Id. at Table VIa. Applying Table VII, DC 6100, this equates to a 0 percent rating.

The Veteran's VA treatment records document an on-going diagnosis of impaired hearing and a May 2016 audiology progress note indicated that the Veteran has normal hearing sensitivity at 250 to 1000 Hertz with mild sloping to severe sensorineural hearing loss at 1500 to 8000 Hertz in both ears.

The Board has carefully reviewed the remaining record in its entirety, but finds no other probative evidence of record showing that the Veteran's hearing loss disability is more severe for compensation purposes than demonstrated in the most recent VA audiological examination discussed above.

The Board acknowledges the reports that the Veteran experiences hearing difficulties, including in conversing with others in person and over the phone, and acknowledges the statements submitted by his wife in July 2009 stating that he experienced severe hearing loss after service. Although the Board finds these statements to be credible, it finds that these factors do not provide sufficient evidence on which to award a higher rating for hearing loss. Again, disability ratings for hearing impairment are derived by a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are rendered. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). In this case, as explained above, the numeric designations do not correlate to a rating in excess of 30 percent. As such, the preponderance of the evidence is against the Veteran's claim for a higher rating. Consequently, the benefit of the doubt rule does not apply. 38 U.S.C.A. § 5107(b).

B. Disability Rating in Excess of 10 Percent for IVDS of the Lumbar 
Spine Prior to July 28, 2015

The Veteran's service-connected low back disability is rated under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5243, which is part of the General Rating Formula for Diseases and Injuries of the Spine. 

In determining the appropriate evaluation for musculoskeletal disabilities, particular attention is focused on functional loss of use of the affected loss. Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by visible behavior on motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Under 38 C.F.R. § 4.45, factors of joint disability include increased or limited motion, weakness, fatigability, or painful movement, swelling, deformity or disuse atrophy.

Under 38 C.F.R. § 4.59, painful motion is an important factor of joint disability and actually painful joints are entitled to at least the minimum compensable rating for the joint.

Where the question of functional loss due to pain upon motion is raised, the provisions of 38 C.F.R. § 4.40 and § 4.45 must be considered. DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995). Within this context, a finding of functional loss due to pain must be supported by adequate pathology, and evidenced by the visible behavior of the claimant. Johnston v. Brown, 10 Vet. App. 80, 85 (1997). Pain itself does not rise to the level of functional loss as contemplated by § 4.40 and § 4.45, but may result in functional loss only if it limits the ability to perform the normal working movements of the body with normal excursion, strength, coordination or endurance. Mitchell v. Shinseki, 25 Vet. App. 32, 43 (2011).

Disabilities of the spine are rated under the under the General Rating Formula for Diseases and Injuries of the Spine (General Formula) found at 38 C.F.R. § 4.71a. Intervertebral disc syndrome can, alternately, be rated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes" also found at § 4.71a. Here, the preponderance of evidence is against a finding that the Veteran has had any incapacitating episodes resulting from his spine disability, as such episodes are defined by VA regulation. 

The General Formula specifies that the criteria and ratings apply with or without symptoms such as pain (whether or not it radiates) stiffness, or aching in the area affected by residuals of injury or disease. Under the General Rating Formula for Diseases and Injuries of the Spine, diseases and injuries to the thoracolumbar spine are to be evaluated under Diagnostic Codes 5235 to 5243 as follows:

Unfavorable ankylosis of the entire spine is evaluated at 100 percent disabling.

Unfavorable ankylosis of the entire thoracolumbar spine is evaluated at 50 percent disabling.

Forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine is evaluated at 40 percent disabling.

Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis is evaluated at 20 percent disabling.

Forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height is evaluated at 10 percent disabling.

Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion.

Note (1) under the General Formula directs raters that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately, under an appropriate diagnostic code.

The pertinent evidence of record includes a July 2008 VA examination, a November 2014 medical opinion from the Veteran's private doctor.

The July 2008 examination was provided following the Veteran's May 2008 claim for an increased rating. The examiner conducted an in-person examination and noted that the Veteran reported constant pain, stiffness, weakness and dizziness but that he had no visual disturbances, numbness, fever, bladder complaints, malaise or bowel complaints. The constant pain experienced by the Veteran was said to be aching and sharp, and, at the time of examination the pain level was 6 on a scale of 1 to 10, with 10 being the worst pain. The Veteran also noted that the pain was made severe by lifting heavy objects or sometimes by sitting in a chair lacking proper back support. 

A review of the musculoskeletal system showed that the Veteran's posture and gait was within normal limits and he did not require any assistive devices for ambulation.

Range of motion testing was conducted and the results were as follows: flexion at 75 degrees with pain at 75 degrees; extension at 30 degrees; right lateral flexion at 25 degrees; left lateral flexion at 25 degrees; right rotation at 20 degrees; and left rotation at 20 degrees. The examiner noted that joint function of the spine is additionally limited by pain, fatigue, weakness, lack of endurance, and incoordination following repetitive use and that pain has the major functional impact. However, these symptoms additionally limited the joint function by 0 degrees.

An x-ray report was included in the examination report and showed anterior osteophytes bridging the L1-2 disc space, but the examiner noted that otherwise the lumbar spine appears within normal limits. The examiner concluded that the Veteran's diagnosis was status post-back injury, with minimal narrowing L5-S1. The subjective factors were low back pain and difficulty standing for long time period. The objective factors were tenderness in the low back with sciatic nerve involvement, sensory loss and loss of range of motion.

Based on these findings, and applying them to the General Rating Formula for Diseases and Injuries of the Spine, the Veteran would only be entitled to a 10 percent rating as his forward flexion of the thoracolumbar spine was 75 degrees, which is greater than 60 degrees but not greater than 85 degrees.

The November 2014 medical opinion was provided by a specialist who reports having reviewed the Veteran's relevant medical history and personnel records and conducted an in-person examination. The private medical opinion reflected a physical examination conducted by the medical provider in 2013 using a goniometer with 5 degree increments. Based on his examination, the private doctor reported the range of motion results as flexion at 70 degrees, extension at 5 degrees, left rotation at 20 degrees, right rotation at 20 degrees, left lateral bending at 10 degrees and right lateral bending at 10 degrees. The examiner also noted that the Veteran exhibited muscle spasms, guarding and tenderness and reported the right leg to be slightly weaker than the left, but hard to discern on examination. The private medical opinion also noted that a sensory exam yielded normal results.

Again, based on these findings, the Veteran would only be entitled to a 10 percent rating as his forward flexion of the thoracolumbar spine was 70 degrees, which is greater than 60 degrees but not greater than 85 degrees. There is no other evidence showing that prior to July 28, 2015, he merited a disability rating in excess of 10 percent.

C. Disability Rating in Excess of 40 Percent for IVDS of the Lumbar 
Spine Following July 28, 2015

In July 2015, the Veteran was afforded a VA examination. Here, the VA examiner noted that the Veteran's date of onset of symptoms was January 1971, following an aircraft crash into the water at approximately 125 knots air speed, of which he was the only survivor. The Veteran reported that the condition worsened over the years, at times with immobilizing pain. The Veteran reported flare-ups that impact the function of the thoracolumbar spine and noted that the flare-ups were described as pain, immobility, and loss of normal function.

Range of motion was measured with a goniometer. Forward flexion ended at 75 degrees, with painful motion at 75 degrees. Extension ended at 10 degrees, with painful motion at 10 degrees. Right lateral flexion ended at 10 degrees, with painful motion at 10 degrees. Left lateral flexion ended at 10 degrees, with painful motion at 10 degrees. Right lateral rotation ended at 10 degrees, with painful motion at 10 degrees. Left lateral rotation ended at 10 degrees, with painful motion at 10 degrees.

The Veteran was able to perform repetitive-use testing with 3 repetitions. Post test results were documented. Post-test forward flexion ended at 75 degrees, post-text extension ended at 10 degrees, post-test right lateral flexion ended at 10 degrees, post-test left lateral flexion ended at 10 degrees, post-test right lateral rotation ended at 10 degrees, and post-test left lateral rotation ended at 10 degrees. These results show that there was not additional limitation in range of motion after three repetitions. The examiner noted that the Veteran did have functional loss and/or functional impairment of the thoracolumbar spine manifested by less movement than normal and pain on movement. Specifically, in the "Remarks" portion of the examination report, the examiner noted that the degree of range of motion loss during pain on use or flare-ups is approximately additional limitation in flexion 5 degrees, and extension 5 degrees. 

The VA examination report reflects that the Veteran did not have localized tenderness or pain to palpation for joints and/or soft tissue of the thoracolumbar spine. The Veteran did not have guarding or muscle spasm of the thoracolumbar spine. Muscle strength testing was administered and all results were normal. The Veteran does not have muscle atrophy. A reflex exam was administered and all results were normal. Sensation to light touch (dermatome) testing was done and the results were all normal. Straight leg raising test on both the right and left leg were negative.

Significantly, the examiner noted that the Veteran has IVDS of the thoracolumbar spine but has not had any incapacitating episodes over the past 12 months due to IVDS. The examiner also noted that the Veteran uses a brace on a regular basis as an assistive device for low back support. No diagnostic imaging studies were performed.

Based on this examination, the RO increased the Veteran's disability rating to 40 percent with an effective date of July 28, 2015. In April 2017, the Veteran submitted a statement stating that his back pain has worsened in the previous two years and that he is awakened by pain at night whenever he attempts to find a new sleeping position. He states that he believes his disability deserves a 100 percent rating.

As stated above, for the Veteran to meet the requirements for a disability above 40 percent, he must show he has unfavorable ankylosis of the entire thoracolumbar spine for a 50 percent rating or show that he has unfavorable ankylosis of the entire spine for a 100 percent rating under the General Rating Formula for Diseases and Injuries of the Spine. 

Ankylosis is defined in 38 C.F.R. § 4.71a, Note 5, as follows: "For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis."

There is no evidence on record that the Veteran suffers from ankylosis, favorable or unfavorable. Therefore, under the General Rating Formula for Diseases and Injuries of the Spine, the Veteran is not entitled to a rating in excess of 40 percent.

Additionally, as stated above, the Veteran's condition cannot be rated under the Formula for Rating IVDS Based on Incapacitating Episodes in 38 C.F.R. § 4.71a because the competent medical evidence shows that the Veteran has not had any incapacitating episodes due to his condition. Therefore, the rating criteria do not apply.

In weighing the evidence and examining the applicable rating criteria, the Board finds that the Veteran's IVDS of the lumbar spine does not more nearly reflect unfavorable ankylosis of the entire thoracolumbar spine, as required for a higher schedular evaluation under DC 5243. Therefore, the claim for a disability in excess of 40 percent must be denied.

Note (1) under the General Formula directs raters that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately, under an appropriate diagnostic code. The Board addresses the neurologic abnormalities - radiculopathy, in the next section of this document. 

D. Entitlement to a Higher Rating for Radiculopathy of the Right Lower 
Extremity, Secondary to IVDS of the Lumbar Spine

The Veteran's neurological impairment of the right lower extremity associated with IVDS of the lumbar spine is rated at 10 percent disabling, effective July 28, 2015, under 38 C.F.R. § 4.124a, Diagnostic Code 5243-8720. 

Under Diagnostic Code 8720, a 10 percent evaluation is assigned for mild incomplete paralysis of the sciatic nerve; a 20 percent evaluation is assigned for moderate incomplete paralysis; a 40 percent evaluation is assigned for moderately severe incomplete paralysis; a 60 percent evaluation is assigned for severe, with marked muscular atrophy incomplete paralysis; and an 80 percent evaluation is assigned for complete paralysis, where the foot dangles and drops, no active movement possible below of muscles below the knee, flexion of knee weakened or (very rarely) lost.

Service connection was established for radiculopathy of the right lower extremity associated with IVDS of the lumbar spine via the March 2017 rating decision, which increased the disability rating of IVDS of the lumbar spine to 40 percent disabling, discussed above. As such, this issue is before the Board on appeal.

The July 2015 VA examination noted that sensation to light touch, or dermatome, testing was administered and the results were all normal in the right and left upper anterior thigh, the right and left thigh/knee, the right and left lower leg/ankle, and the right and left foot/toes. No other sensory findings were reported. As stated above, straight leg raising tests were performed and the results were negative in both the right and left leg. The Veteran was tested for radiculopathy, and the examination report reflects that the Veteran does have mild radiculopathy in the right lower extremity. This was categorized as intermitted pain (usually dull). The Veteran had no other signs or symptoms of radiculopathy in the examination. The examiner indicated that the nerve roots involved are the L4/L5/S1/S2/S3 nerve roots - the sciatic nerve on the right side. The severity of the radiculopathy was noted to be mild on the right, and none on the left.

The examiner marked that the Veteran did not have constant pain or paresthesias and/or dysesthesias or numbness in either lower extremity. 

Medical evidence from the Veteran's private medical provider detailed a 2013 physical exam, which noted that the right leg felt slightly weaker than the left, but was hard to discern on examination. This private examiner noted sensory results were normal. 

The above findings reflect that there are neurological symptoms of radiculopathy, but the preponderance of the evidence, including thorough VA examinations, indicate that these have not risen to the level of associated objective neurologic abnormalities approximating more than moderate paralysis of the sciatic nerve, consistent with the criteria of a 20 percent disability rating. 




E. Service Connection for Sleep Apnea with CPAP, to Include as 
Secondary to Service-Connected PTSD

The Veteran is seeking service connection for sleep apnea with CPAP as due to his service-connected PTSD. The Veteran was originally denied service connection for sleep apnea in an August 2013 rating decision for failure to show that the current diagnosis of sleep apnea was incurred in or aggravated by service. At the time of that rating decision, the Veteran had not been service connected for PTSD. A year later, in August 2014, the Veteran was granted service connection for PTSD and assigned a disability rating of 70 percent, with an effective date of May 18, 2012.

As explained below, the Board finds that service connection for sleep apnea, to include as secondary to PTSD, is not warranted.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. In order to establish service connection for the claimed disability, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical, or in certain circumstances, lay evidence of a nexus between the claimed in-service disease or injury and the current disability. See 38 C.F.R. § 3.303 (2016); see also Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Service connection may be granted for a disability which is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a). Additional disability resulting from the aggravation of a nonservice-connected disability by a service-connected disability is also compensable under 38 C.F.R. § 3.310(a). Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

"Aggravation" of a nonservice-connected condition by a service-connected condition means a chronic worsening of the nonservice-connected condition by the service-connected condition, not merely temporary or intermittent flare-ups. See Hunt v. Derwinski, 1 Vet. App. 292 (1991); Davis v. Principi, 276 F.3d 1341 (Fed. Cir. 2002). 

First, the Board discusses direct service connection. The Veteran's service treatment records (STRs) are devoid of any indication that he complained of, was diagnosed with, or suffered from sleep apnea during service. August 1966 and June 1969 annual flight examinations showed that the "nose" was marked as abnormal and a notation was made that the Veteran had a septal spur in the left side but had an adequate airway. This was marked as "not considered disabling/disqualifying" or NCD. Annual examination reports from August 1974, June 1975, March 1977, March 1979, reflected that all relevant body systems, including nose and sinuses, were marked as normal. A June 1982 annual flight examination showed that all relevant body systems, including nose and sinuses, were marked as normal The Veteran self-reported seldom experiencing insomnia, but also reported that he did not have morning tiredness or easy fatigability. 

The Veteran himself reports, and post-service treatment records reflect, that he was not diagnosed with sleep apnea until March 2011 following a polysomnography completed by the Veteran's private medical provider. This diagnosis comes nearly 25 years after his separation from service.

After careful review of the medical evidence of record, the Board cannot make a finding that the Veteran's claimed sleep apnea was at least as likely as not incurred in or as a result of his period of active service. The Veteran contends that the date of onset occurred somewhere between 1968 and 1970, but there is no competent medical evidence to reflect that this is so. Notably, post-service treatment records from June and November 2006 explicitly state that the Veteran did not have sleep apnea during that time and it is not until January 2011 post-service treatment records where the Veteran's sleep apnea is first recorded.

The Board notes that May 2012 statements from the Veteran's wife and son-in-law are incorporated into the record detailing their experiences with the Veteran's sleep apnea including back to periods of service. However, the Veteran has not submitted any competent medical evidence linking his sleep apnea to an in-service injury or disease, and therefore, the requirements for direct service connection have not been met and service connection is not warranted. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303(a) (2016). 

Turning to the question of secondary service connection, the Board notes that during the course of his appeal, the Veteran has attributed his sleep apnea to his service-connected PTSD. In a May 2012 VA Form 21-4138, the Veteran contends that his sleep apnea is secondarily connected to service via his PTSD because studies have determined that PTSD may cause sleep apnea. To support his statement, the Veteran submitted articles from several medical journals detailing the relationship between PTSD and sleep apnea. Generic medical literature which does not apply medical principles regarding causation or etiology to the facts of an individual case does not provide competent evidence to establish a nexus. See Libertine v. Brown, 9 Vet. App. 521, 523 (1996). The exception to this competency rule is when the medical treatise information, where "standing alone, discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least plausible causality based upon objective facts rather than on an unsubstantiated lay medical opinion." Wallin v. West, 11 Vet. App. 509, 513 (1998). In this case there is no supporting medical evidence that the general principles cited in the articles relate to the specific situation of the Veteran. Mattern v. West, 12 Vet. App. 222, 228 (1999). Therefore, the probative values of the articles are low. 

Further, the Veteran does not contend, and nothing in the record shows, that a treatment provider for the Veteran has told him that his sleep apnea was caused by, or aggravated by, his PTSD. In fact, March and July 2016 medical records from Fort Belvoir indicate that the Veteran's sleep apnea is a secondary result of obesity.

The Board has considered the Veteran's lay contentions that there is a causal link between sleep apnea and the service-connected PTSD. Lay persons are competent to provide opinions on some medical issues. Kahana v. Shinseki, 24 Vet. App. 428 (2011). Determining the etiology of sleep apnea requires inquiry into biological processes that are internal and not readily observable to a lay person. Determining whether PTSD causes sleep apnea is beyond the competence of the Veteran in this case, as the record does not show that he has training, skills, or expertise needed to render an opinion.

With regard to aggravation, the Veteran has not advanced a specific lay argument in support of this theory. Regardless, in the absence of medical evidence, his conclusory statements are not sufficient to establish a nexus between sleep apnea and PTSD. Waters v. Shinseki, 601 F. 3d 1274 (Fed. Cir. 2010). As noted above, the Veteran in this case is not competent to provide a nexus opinion. 

Based on the above, the Board concludes that the preponderance of evidence is against the claim of entitlement to service connection for sleep apnea on a direct or secondary basis. The appeal must therefore be denied. There is no reasonable doubt to be resolved in this case. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

IV. Total Disability Based on Individual Unemployability (TDIU)

The Board notes that the record has raised a claim for TDIU. With regard to the issue of TDIU, under 38 C.F.R. § 3.340 (a)(1), total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. If there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16. 

The Veteran has a combined disability rating of 80 percent from May 30, 2008, and 90 percent from March 2010. The ratings include a 70 percent evaluation for PTSD since May 30, 2003. The Veteran has reported that he last worked on December 31, 2010. The Board finds that there is an approximate balance of positive and negative evidence as to whether the service-connected disabilities in combination render him unable to obtain or maintain employment. The benefit sought on appeal is granted.


ORDER

Entitlement to a compensable rating for bilateral hearing loss is denied.

Entitlement to a disability rating in excess of 40 percent for IVDS of the lumbar spine is denied.

Entitlement to a disability rating in excess of 10 percent for radiculopathy of the right lower extremity is denied.

Entitlement to service connection for sleep apnea with CPAP, to include as secondary to service-connected PTSD, is denied.

Entitlement to TDIU is granted.




____________________________________________
MICHAE LANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs